IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ASHLEY L. ISHMAEL,<br>    Plaintiff, | :<br>:<br>: | |
| v. | : | Case No. 2:22-cv-1095-JDW |
| GM FINANCIAL INC., et al.,<br>    Defendants. | :<br>:<br>: | |

### MEMORANDUM

Ashley Ishmael bought a car, and had that car repossessed. She claims that everything about that transaction violated federal laws and asks for leave to proceed without paying court costs or fees. For the reasons given below, the Court will give her leave to proceed without paying fees. But, after screening, the Court will dismiss her Complaint, partly with prejudice and partly without prejudice.

### I.    FACTUAL ALLEGATIONS

According to the Complaint, on July 6, 2021, Ms. Ishmael entered into a Retail Installment Sale Contract to finance her purchase of a used 2020 Chevrolet Malibu. Under the heading "Federal Truth-in-Lending Disclosures," the Contract provides an annual percentage rate of 8.90%, a finance charge of $9,589.30, the amount financed as $27,541.20, the total amount of payments owed as $38,130.50, and a total sales price of $37,130.50. The Contract requires Ms. Ishmael to make seventy-five monthly payments of $481.74 beginning on August 20, 2021. Ms. Ishmael made a down payment of $1,000.00 towards the total price of the car.

Ms. Ishmael claims that by providing her credit card information as part of the credit application process, she "created the credit that [GM] extended back to [her] in the form of an alleged loan" and that GM "never actually loaned [her] anything." (ECF No. 2, ¶¶ 4, 7.) She also claims that Chapman Chevrolet LLC and GM Financial Inc. improperly required a down payment, failed to provide the proper disclosures (including the right to opt-out and insurance finance information), and invaded her privacy by disclosing nonpublic personal information. In October 2021, Ms. Ishmael sent an "affidavit of truth" to GM Financial with a "cease and desist" notice. At the same time, Ms. Ishmael stopped paying her monthly car loan payments. GM Financial then hired Top Notch to "repossess [the Malibu] on [its] behalf." (*Id.* at ¶ 17.)

The Complaint asserts claims under the Fair Debt Collection Practices Act, 15 U.S.C. §1692 *et seq.* (Count I), the Fair Credit Reporting Act, 15 U.S.C. §1681 *et seq.* (Count II), the Truth in Lending Act, 15 U.S.C. §1601 *et seq.*, (Count III), the Gramm-Leach-Bliley Act, 15 U.S.C. § 6801 *et seq.* (Count IV), and a federal statute that criminalizes aggravated identity theft, 18 U.S.C. § 1028A. Ms. Ishmael seeks monetary damages, attorneys fees, and possession of the Malibu with title, lien-free.

## II.    STANDARD OF REVIEW

A plaintiff seeking leave to proceed *in forma pauperis* must establish that she is unable to pay for the costs of her suit. *See Walker v. People Express Airlines, Inc.*, 886 F.2d 598, 601 (3d Cir. 1989). Where, as here, a court grants a plaintiff leave to proceed *in forma*

*pauperis*, the Court must determine whether the complaint states a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii). That inquiry requires the Court to apply the standard for a motion to dismiss under Fed. R. Civ. P. 12(b)(6). Under that standard, the Court must take all well-pleaded allegations as true, interpret them in the light most favorable to the plaintiff, and draw all inferences in her favor. *See Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016). Moreover, because Ms. Ishmael is proceeding *pro se*, the Court must construe her pleadings liberally. *See Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011).

### III.   DISCUSSION

#### A.   *In Forma Pauperis*

Ms. Ishmael has completed the form provided on the Court's website for applications to proceed *in forma pauperis* and has attested under penalty of perjury that she cannot afford to pay the filing fees. Her application to proceed *in forma pauperis* demonstrates that she lacks the income or assets to pay the required filing fees. The Court will grant her leave to proceed *in forma pauperis*.

#### B.   Plausibility Of Claims

##### 1.   GLBA and Identity Theft (18 U.S.C. § 1028A)

Neither the GLBA nor the identity theft statute under which Ms. Ishmael asserts a claim includes a right of action, as numerous cases have decided. *See USAA Fed. Sav. Bank v. PLS Fin. Servs., Inc.*, 340 F. Supp. 3d 721, 726 (N.D. Ill. 2018); *Grooms v. Discover Fin.*

*Serv.*, No. 21-4265, 2021 WL 6072809, at *2 (E.D. Pa. Dec. 22, 2021); *see also Farrar v. McNesby*, 639 F. App'x 903, 905 (3d Cir. 2016); *Prater v. Am. Heritage Fed. Credit Union*, 351 F. Supp. 3d 912 (E.D. Pa. 2019) (dismissing identity theft claim because the statute does not give rise to a civil cause of action). The Court will not repeat the analysis of those cases here, but it agrees with them and will adopt their reasoning. It will therefore dismiss Ms. Ishmael's claims under those statutes with prejudice.

### 2. FDCPA

"The FDCPA provides a remedy for consumers who have been subjected to abusive, deceptive or unfair debt collection practices by debt collectors." *Piper v. Portnoff Law Assocs., Ltd.*, 396 F.3d 227, 232 (3d Cir. 2005). To state a claim under the FDCPA, a plaintiff must establish that: (1) he or she is a consumer who was harmed by violations of the FDCPA; (2) that the debt arose out of a transaction entered into primarily for personal, family, or household purposes; (3) that the defendant collecting the debt is a "debt collector," and (4) that the defendant violated, by act or omission, a provision of the FDCPA. *See Joensen v. Pressler & Presssler*, 731 F.3d 413, 417 (3d Cir. 2015). The FDCPA defines "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). This statutory language focuses "on third party collection agents working for a debt owner—not on a

debt owner seeking to collect debts for itself." *Henson v. Santander Consumer USA Inc.*, 137 S. Ct. 1718, 1721 (2017). In contrast, "creditor" is defined as "any person who offers or extends credit creating a debt or to whom a debt is owed, but such term does not include any person to the extent that he receives an assignment or transfer of a debt in default solely for the purpose of facilitating collection of such debt for another." *Id.* § 1692a(4).

Although Ms. Ishmael alleges that GM Financial and Chapman are debt collectors, she does not allege any facts to support that conclusion. Nothing in the Complaint suggests that GM Financial's or Chapman's principal business is debt collection, and the Complaint and exhibits suggest that one or both of them was a creditor, not a debt collector. Absent facts from which it could be plausibly inferred that GM Financial or Chapman acted as debt collectors in this context, Ms. Ishmael cannot state a claim under the FDCPA.

Ms. Ishmael also claims that Top Notch is a debt collector. Courts have "interpreted § 1692a(6) of the FDCPA to mean that repossession agencies are subject to the FDCPA, *but only* for § 1692f(6) and not the remaining provisions of the statute." *Rivera v. Dealer Funding, LLC*, 178 F. Supp. 3d 272 (E.D. Pa. 2016) (emphasis added). Ms. Ishmael has not pleaded a plausible claim under that provision, though. Section 1692f(6) requires, among other things, "no present right to possession of the property claimed as collateral through an enforceable security interest." 15 U.S.C. § 1692f(6). Ms. Ishmael acknowledges that she

5

signed the Contract. That agreement sets forth Ishmael's monthly payment schedule and a warning that "[i]f you do not meet your contract obligations, you may lose the vehicle." (ECF No. 2-1 at 3.) Ms. Ishmael stopped payments on the car loan in October 2021, so Top Notch's repossession of the Malibu was based on the Contract.

Ms. Ishmael references an "affidavit of truth" that she provided to GM Financial that addresses and explains the reasons for her non-payment. But Ms. Ishmael did not provide the affidavit, relay its contents, or otherwise pleaded facts to permit the Court to infer that the Contract did not apply. That absence means that the Court cannot infer that Top Notch violated any provision of the FDCPA. The Court will dismiss Ms. Ishmael's FDCPA claim without prejudice and give her an opportunity to file an amended claim that addresses these deficiencies.

### 3. FCRA

Congress enacted the FCRA "to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52 (2007). In the language of the FCRA, consumer reporting agencies "collect consumer credit data from 'furnishers,' such as banks and other lenders, and organize that material into individualized credit reports, which are used by commercial entities to assess a particular consumer's creditworthiness." *Seamans v. Temple Univ.*, 744 F.3d 853, 860 (3d Cir. 2014).

Ms. Ishmael has not alleged (and probably cannot allege) that any Defendant is a consumer reporting agency, so she must be pursuing claims against them as furnishers. Courts in this Circuit agree that to state a plausible claim under the FCRA against a furnisher of credit information, a plaintiff must allege that she "filed a notice of dispute with a consumer reporting agency; the consumer reporting agency notified the furnisher of information of the dispute; and the furnisher of information failed to investigate and modify the inaccurate information." *Harris v. Pa. Higher Educ. Assistance Agency/Am. Educ. Servs.*, No. 16-693, 2016 WL 3473347, at *6 (E.D. Pa. June 24, 2016); *see also* 15 U.S.C. § 1681s-2(b). If the furnisher fails to comply with its obligations under the Act, "the aggrieved consumer can sue for noncompliance." *Hoffmann v. Wells Fargo Bank, N.A.*, 242 F. Supp.3d 372, 391 (E.D. Pa. 2017). Ms. Ishmael has not alleged that she filed a dispute with any credit reporting agencies, that any agency relayed a dispute to any Defendant, or that any Defendant failed to investigate. Her FCRA claim fails as a result. The Court will give her an opportunity to cure these deficiencies in an amended pleading, if she can do so truthfully.

    **4.    TILA**

TILA regulates "the relationship between lenders and consumers ... by requiring certain disclosures regarding loan terms and arrangements." *McCutcheon v. America's Servicing Co.*, 560 F.3d 143, 147 (3d Cir. 2009). "TILA generally requires that a creditor in a consumer transaction disclose, among other things: (1) the identity of the creditor; (2)

the amount financed; (3) the finance charge; (4) the annual percentage rate; (5) the sum of the amount financed and the finance charge, or total of payments; [and] (6) the number, amount, and due dates or period of payments scheduled." *Krieger v. Bank of Am., N.A.*, 890 F.3d 429, 432 (3d Cir. 2018) (quote omitted). Creditors also must disclose definitions and explanations of those terms and information about borrower's rights in a manner that is reasonably understandable and noticeable to the consumer. *See id.* at 432-33. A consumer may file suit under TILA against a creditor that fails to comply with the relevant requirements. *See* 15 U.S.C. § 1640(e).

Ms. Ishmael alleges that GM Financial and Chapman failed to provide required disclosures to her at the time she signed the Contract, including disclosures regarding (1) the "right to rescind the consumer credit transaction" pursuant to 15 U.S.C. § 1635(a), and (2) that "insurance [would be] included in the finance charge" pursuant to 15 U.S.C. § 1605(c). (ECF No. 2 at ¶ 14.) However, neither statutory reference applies in this case. Section 1635(a) relates to a consumer's right of recission in mortgage transactions. *See Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 411 (1998). It does not apply to Ms. Ishmael's auto loan. Section 1605(b) deals with "life, accident, or health insurance premiums included in [a] finance charge." 15 U.S.C. § 1605(b). The Complaint and its attachments indicate that the price of the Malibu did not include any insurance options, let alone the types to which Section 1605(b) applies. (*See* ECF No. 2-1 at 4 (indicating "N/A" as to offered insurance options included in the finance charge).) In fact, the Contract provides

Ms. Ishmael with notice of her obligation to insure the vehicle. These facts demonstrate that Ms. Ishmael has no plausible TILA claim. And, because nothing she could allege would change that outcome, the Court will dismiss her TILA claim with prejudice.

## IV.     CONCLUSION

The Court will grant Ms. Ishmael leave to proceed *in forma pauperis*. It will dismiss her GLBA, TILA, and identity theft claims with prejudice, and it will dismiss her FDCPA and FCRA claims without prejudice. If Ms. Ishmael can file a truthful amended pleading that is consistent with this opinion, she may do so within 30 days. An appropriate Order follows.

**BY THE COURT:**

*/s/ Joshua D. Wolson*
**JOSHUA D. WOLSON, J.**

June 9, 2022